IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CR-312-1BR
No. 5:18-CV-84-BR

| | |
|---|---|
| MARCUS DORRELL BYRD, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA, )<br>)<br>Respondent. ) | ORDER |

This matter is before the court on the government's motion to dismiss petitioner's second amended 28 U.S.C. § 2255 motion, (DE # 139), to which petitioner filed a response, (DE # 151), and a motion for an evidentiary hearing, (DE # 152). Subsequently, petitioner filed a motion to amend his § 2255 motion a third time, (DE # 154), a motion for appointment of counsel to assist him with obtaining § 2255 relief, (DE # 155), and an addendum supporting his second amended § 2255 motion, (DE # 156).

## I. BACKGROUND

In 2014, a jury convicted petitioner of conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846 ("Count 1"); two counts of distribution of cocaine in violation of 21 U.S.C. § 841(a)(1); possession of a firearm in furtherance of the drug trafficking crime alleged in Count 1 in violation of 18 U.S.C. § 924(c)(1)(A) ("Count 4"); and felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) ("Count 5"). The court sentenced petitioner to life imprisonment on Count 1, a consecutive term of 25 years on Count 4, and concurrent terms on the other counts, resulting in a

total term of imprisonment of life. Petitioner appealed his convictions and sentence. The Fourth Circuit Court of Appeals affirmed. (DE # 91.) The Supreme Court denied a petition for a writ of certiorari on 4 December 2017. Byrd v. United States, No. 17-6555.

In February 2018, petitioner filed his initial § 2255 motion. (DE # 92.) With leave of court, petitioner was twice permitted to amend his § 2255 motion. (See 5/1/19 Order, DE # 111; 3/27/20 Order, DE # 131.) The government moves to dismiss petitioner's second amended § 2255 motion, and petitioner seeks leave to amend his motion again, among other things.

## II. DISCUSSION

### A. Government's Motion to Dismiss

The government requests that the court dismiss petitioner's second amended § 2255 motion pursuant to Federal Rule of Civil Procedure 12(b)(6).

> It is well established that a motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint, and that the legal sufficiency is determined by assessing whether the complaint contains sufficient facts, when accepted as true, to "state a claim to relief that is plausible on its face." This plausibility standard requires only that the complaint's factual allegations "be enough to raise a right to relief above the speculative level."

Houck v. Substitute Tr. Servs., Inc., 791 F.3d 473, 484 (4th Cir. 2015) (citations omitted). This standard applies equally to a Rule 12(b)(6) motion challenging a § 2255 motion. See Rule 12, Rules Governing Section 2255 Proceedings (applying the Federal Rules of Civil Procedure to § 2255 proceedings to the extent such rules are not inconsistent with any statute or the § 2255 rules).

Petitioner asserts the following claims: (1) ineffective assistance of trial counsel, (Mot., DE # 130, at 4; Mem., DE # 130-1, at 2-10); (2) selective prosecution, (Mem, DE # 130-1, at 10-12); (3) insufficiency of evidence as to Count 1, (id. at 13-16); (4) invalidity of his conviction on

Count 5 in light of the decision in Rehaif v. United States, 139 S. Ct. 2191 (2019), (id. at 16); and (5) violation of the First Step Act of 2018, (id. at 17-18). The court considers these claims in turn.

*1. Ineffective assistance of trial counsel claim*

Petitioner claims that trial counsel was ineffective in several respects.

> To establish a claim of ineffective assistance of counsel, a defendant must show (1) that "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense." To satisfy the deficiency prong, the defendant must show that counsel's performance "fell below an objective standard of reasonableness." "Judicial scrutiny of counsel's performance must be highly deferential." There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and "that, under the circumstances, the challenged action might be considered sound trial strategy."
> Under the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." There must be "a probability sufficient to undermine confidence in the outcome" of the trial. However, a defendant is not required to establish that "counsel's deficient conduct more likely than not altered the outcome of the case."

United States v. Rangel, 781 F.3d 736, 742 (4th Cir. 2015) (citations omitted).

i. failure to file a motion to suppress

Petitioner first claims trial counsel should have filed a motion to suppress. (Mem., DE # 130-1, at 2-3.) The above-quoted standard is "refined" for assessing ineffective assistance of counsel claims based on the failure to file a motion to suppress. United States v. Pressley, 990 F.3d 383, 388 (4th Cir. 2021). With those claims, and

> [w]ith respect to the performance prong, [the court] ask[s] whether the unfiled motion would have had some substance. If the motion would have had some substance, then [the court] ask[s] whether reasonable strategic reasons warranted not filing the motion. To satisfy the prejudice prong, the defendant must show that: (1) the suppression motion was meritorious and likely would have been granted, and (2) a reasonable probability that granting the motion would have affected the outcome of his trial.

3

Id. (internal quotation marks, citations, and alteration omitted). Petitioner contends that counsel should have moved to suppress his alleged statements to law enforcement that he sells about one-half ounce a week and that the only prints on a gun were his. (See Mem., DE # 130-1, at 2-3.)

At trial, Detective Thompkins testified that after executing a search warrant at an apartment where petitioner was staying with his girlfriend and after petitioner was arrested and waived his Miranda rights, petitioner told him and Agent Collins that he sold one half ounce of cocaine per week for the past nine months and that the only prints on the gun (found during the search) should be his. (8/5/14 Tr., DE # 89-1, at 92-93, 96-97, 106.) Agent Collins' testimony corroborated Detective Thompkins' testimony. (See 8/6/14 Tr., DE # 89-2, at 15, 17, 20.)

According to petitioner, he never made such statements, and, in fact, when the officers began questioning him, he informed them he wanted an attorney to be present. (Byrd Aff., DE # 130-2, ¶¶ 6-7.)[1] Petitioner told trial counsel of this prior to trial. (Id. ¶ 7.) Based on his version of events, along with the fact the officers did not document petitioner's alleged statements or accurately document the items seized pursuant to a search warrant, petitioner contends the court likely would have granted a motion to suppress his alleged statements. (Mem., DE # 130-1, at 3.)

Accepting petitioner's version of events and assuming trial counsel's performance was deficient in not filing a motion to suppress on this basis,[2] petitioner cannot show he was prejudiced thereby. There was ample evidence of petitioner's distribution of cocaine (including

---

[1] The court considers petitioner's affidavit because he attached it to his second amended § 2255 motion. See Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009) (recognizing that when reviewing whether dismissal is appropriate under Rule 12(b)(6), the court may consider documents attached to the complaint).
[2] Trial counsel *did* file motions to exclude from evidence at trial (1) a statement petitioner made in the presence of law enforcement at the time of the execution of the search warrant and (2) the gun seized during the search. (See DE ## 51, 52.) The court denied the motions. (8/1/14 Order, DE # 62.)

conspiring to distribute) and possession of a firearm, other than the alleged statements petitioner contends should have been suppressed.

For example, Robin Applewhite, who was working as a confidential informant, purchased two ounces of cocaine from petitioner on two occasions, one week apart, shortly before petitioner's arrest, and both purchases were recorded by law enforcement. (8/5/14 Tr., DE # 89-1, at 156-75.) Marcus Moore supplied petitioner with increasing amounts of cocaine— eventually two kilograms of cocaine per month—from 2009 until March 2011 (three months before petitioner's arrest), when petitioner began purchasing from another supplier. (Id. at 222-28, 236.) Moore testified petitioner told him that he was selling the cocaine to others from Virginia. (Id. at 238.) During the search of the apartment, bundles of cash, items used to process cocaine for sale, a gun, and cocaine residue were found. (8/5/14 Tr., DE # 89-1, at 66-76, 83, 85-89.) Detective Thompkins testified that, based on his training and experience, drug dealers often have those items in their homes, (id. at 8-10), and keep firearms easily accessible to protect themselves against robberies, (see id. at 10). The subject gun was found under petitioner's side of the bed. (Id. at 76.)

Although the government recounted petitioner's statements in its opening statement, (8/4/14 Tr., DE # 89, at 18, 23), and closing argument, (8/6/14 Tr., DE # 89-2, at 57, 77), the statements were not central to its case, cf. Pressley, 990 F.3d at 391-92 (holding the defendant had sufficiently shown prejudice where his confession was very detailed and the centerpiece of the government's presentation). In light of evidence other than the statements, a reasonable jury could have concluded beyond a reasonable doubt that petitioner was guilty of the offenses charged. Therefore, there is not a reasonable probability that granting a motion to suppress those statements would have affected the outcome of petitioner's trial.

### ii. testimony regarding petitioner's criminal background

Next, petitioner faults trial counsel for failing to object to Detective Thompkins' testimony that petitioner had a probation officer, had a criminal history, and was violent. (Mem., DE # 130-1, at 4; see also 8/5/14 Tr., DE # 89-1, at 61, 63, 11, 171.) Petitioner argues that this testimony was prejudicial because "he . . . has no criminal violent history and suggested to a jury that they should convict." (Mem., DE # 130-1, at 4.) Contrary to petitioner's argument, he has a criminal history, including felony convictions related to drug trafficking, firearms, and instigating a violent riot within a federal prison, and was under the supervision of a federal probation officer at the time the state authorities executed the search warrant and arrested him. (See PSR, DE # 79, ¶¶ 16, 17, 19, 20.) Notably, Detective Thompkins did not elaborate on petitioner's criminal history. Also, petitioner, through trial counsel, stipulated to the fact he had previously been convicted of a felony. (8/5/14 Tr., DE # 89-1, at 147.) Trial counsel did not have a meritorious basis for objecting to the testimony nor was petitioner prejudiced by the failure to object to the testimony.

### iii. failure to call witnesses

Petitioner also contends counsel should have called four witnesses on his behalf. According to petitioner, his girlfriend, Ebony Miller, would have testified, contrary to Detective Thompkins' testimony, that she and petitioner did not have a conversation about the gun found in the apartment.[3] (Byrd Aff., DE # 130-1, ¶ 9.) Petitioner provided this information to counsel, told her he had contact information for Miller, and asked counsel to call her as a witness. (Id. ¶ 8.) Accepting this as true, however, counsel made a reasonable strategic decision not to call

---

[3] Detective Thompkins testified that after the search and while waiting for petitioner to be transported to the police department, he overheard Miller say to petitioner, "'I can't believe you brought a gun into my house,'" to which petitioner responded, "'I had to, I need it for protection.'" (8/5/14 Tr., DE # 89-1, at 84-85.)

6

Miller as witness. In closing argument, trial counsel used Miller's absence to petitioner's benefit, pointing out that she was on the government's witness list; arguing that the jury should question why, with all its resources, the government was unable to locate her; and suggesting that the government did not call her because of what she might say, i.e., something favorable to petitioner. (See 8/6/14 Tr., DE # 89-2, at 66.) Counsel's performance was not objectively unreasonable in failing to call Miller as a witness.

Even if it was, petitioner cannot show he was prejudiced. Other evidence—namely that the gun was found under petitioner's side of the bed and that drug dealers typically keep firearms nearby for protection—linked petitioner to gun. Therefore, there is no reasonable probability that petitioner would have been acquitted of the firearm offenses had Miller testified.

As for the other three potential witnesses, petitioner claims his family told him, "Marcus Moore made statements to [those witnesses] that he was going to throw [petitioner] under the bus and falsely testify against [petitioner] in order to get out of jail sooner . . . ." (Byrd Aff., DE # 130-1, ¶ 10.) To be sure, the government's case on the conspiracy offense largely centered on Moore's testimony. However, trial counsel attacked his credibility on several grounds, including that his prior cooperation with the government resulted in a reduced sentence on another conviction and that by providing "helpful" testimony during petitioner's trial, he hoped to receive a reduced sentence on his pending federal charges. (See 8/5/14 Tr., DE # 89-1, at 241-45, 252-54.) In closing argument, trial counsel emphasized that the government's witnesses "have a history of dishonesty" and "had benefits that they wanted to gain from taking the stand and telling the story that they told." (8/6/14, DE # 89-2, at 58.) She characterized Moore as a "known liar," (id. at 68), who "knows the game and [] was playing it yesterday [when he testified]," (id. at 59). She argued, "Moore cannot be believed in any form or fashion . . . ." (Id.)

7

Having witnesses testify about Moore's motive to testify falsely would have added nothing to what was already before the jury regarding Moore's credibility, and therefore, petitioner cannot show he was prejudiced by trial counsel's failure to call those witnesses.

iv.      failure to properly explain the right to testify

Finally, petitioner claims counsel was ineffective by failing to properly explain to him his right to testify and by advising him that if he testified, the government could bring out his prior felony convictions. (Mem., DE # 130-1, at 8.) According to petitioner, he would have testified but for trial counsel's improper advice, (see Byrd Aff., DE # 130-2, ¶¶ 3-4), and it was particularly harmful because trial counsel stipulated to his prior convictions being read to the jury and because his testimony would have contradicted the government's witnesses and corroborated his witnesses, (Mem., DE # 130-1, at 8-10).

A criminal defendant has a right to testify at trial on his or her behalf. United States v. Midgett, 342 F.3d 321, 325 (4th Cir. 2003).

> [A] district court is not required to advise the defendant of his right to testify or obtain an on-the-record waiver of that right. *United States v. McMeans*, 927 F.2d 162, 163 (4th Cir.1991); *see Sexton v. French*, 163 F.3d 874, 881 (4th Cir.1998) ("[T]he trial court does not have a *sua sponte* duty to conduct a colloquy with the defendant at trial to determine whether the defendant has knowingly and intelligently waived the right to testify."). Rather, "[t]o waive the right, all the defendant needs to know is that a right to testify exists." *McMeans*, 927 F.2d at 163.

United States v. Stewart, 129 F. App'x 758, 769 (4th Cir. 2005).

Here, petitioner was obviously aware of his right to testify, yet decided to waive it based on trial counsel's advice. (See Byrd Aff., DE # 130-2, ¶¶ 3-4.) Counsel correctly advised him that if he testified, his prior felony convictions could be used to impeach him. See Fed. R. Evid. 609(a)(1)(B). Further, because petitioner was charged with being a felon in possession of a firearm and to avoid jurors hearing information about any of petitioner's prior felony

8

convictions, counsel agreed to stipulate only to the fact that petitioner had been convicted of *a* felony. (See DE # 89-1, at 147.) As a result, the names of petitioner's several felony convictions were not mentioned during the trial.

The court instructed jury:

> The parties have stipulated that . . . the defendant had previously been convicted of a felony, that is, a crime punishable by a term of imprisonment exceeding one year. Evidence of a defendant's previous conviction of a crime punishable by a term of imprisonment exceeding one year is a necessary element of the offense [of felon in possession of a firearm], but such evidence does not mean that there is any presumption or inference of guilt as to this charge.

(8/6/14 Tr., DE # 89-2, at 100-01.) As for petitioner's decision not to testify or put on any evidence, the court instructed the jury that the government has the burden of proving petitioner guilty; petitioner is not obligated to prove anything; and "no inference whatever" may be drawn from his not testifying. (Id. at 81.)

Under these circumstances, counsel acted reasonably in advising petitioner against testifying at trial.

2. *Selective prosecution claim*

Petitioner additionally claims that the government selectively prosecuted him with its notice of sentencing enhancement under 21 U.S.C. § 851 based on his geographical location (North Carolina), race (African Moorish American), and failure to plead guilty and testify like government witnesses Robin Applewhite and Marcus Moore. (Mem., DE # 130-1, at 10-12.)

> A selective prosecution claim is an "assertion that the prosecutor had brought the charge for reasons forbidden by the Constitution." The government ordinarily has wide latitude in deciding whether to prosecute. However, equal protection forbids basing the decision "on an unjustifiable standard such as race, religion or other arbitrary classification."
> . . . . "In order to dispel the presumption that a prosecutor has not violated equal protection, a criminal defendant must present clear evidence to the contrary," demonstrating that the government was motivated by a discriminatory purpose to adopt a prosecutorial policy with a discriminatory effect. To make this showing, a

9

defendant must "establish both (1) that similarly situated individuals of a different race were not prosecuted, and (2) that the decision to prosecute was invidious or in bad faith."

United States v. Venable, 666 F.3d 893, 900 (4th Cir. 2012), as amended (Feb. 15, 2012) (citations omitted).

To support his selective prosecution claim based on geographical location and race, petitioner cites to a 2011 report of the United States Sentencing Commission and United States v. Young, 960 F. Supp. 2d 881 (N.D. Iowa 2013). (Mem., DE # 130-1, at 10.) Although the report shows variation in the application of the § 851 enhancement among the federal judicial districts and among racial groups, see United States Sentencing Commission, 2011 Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System, at 254-57 (Oct. 2011), https://www.ussc.gov/research/congressional-reports/2011-report-congress-mandatory-minimum-penalties-federal-criminal-justice-system,[4] and the Young case illustrates the "shocking disparity among the nation's ninety-four districts," 960 F. Supp. 2d at 903,[5] neither show that defendants similarly situated to petitioner did not receive the enhancement or that the government was motivated by a discriminatory purpose, see Musa v. United States, 502 F. Supp. 3d 803, 819 n.15 (S.D.N.Y. 2020) (dicta) ("[T]he statistics contained in the Sentencing Commission's [2011 and 2018] reports do not support a selective prosecution claim because they do not demonstrate that the prosecutor in [the defendant's] case was motivated by improper reasons." (citations omitted)); Ingram v. United States, 296 F. Supp. 3d 1076, 1088 (N.D. Iowa

---

[4] For this district, based on data from fiscal years 2006, 2008, and 2009, less than 25% of eligible defendants received the enhanced penalty under § 851. 2011 Report to the Congress: Mandatory Minimum Penalties in the Federal Criminal Justice System, at 256, fig. 8-50. For African American offenders nationwide, 29.9% "who were eligible to receive the enhanced penalty did, in fact, receive it." Id. at 257.

[5] This district ranked among the *lowest* for eligible defendants who received the § 851 enhancement. See Young, 960 F. Supp. 2d at 911 (Appx. A) (less than 9%).

10

2017) ("[W]hile the statistical comparison of various districts set out in [Young], shows substantial disparities in the application of § 851 enhancements among federal districts, those statistics do not demonstrate the required different treatment of persons *similarly situated in relevant respects* to establish the 'discriminatory effect' element of an equal protection/selective prosecution claim."), aff'd, 932 F.3d 1084 (8th Cir. 2019); cf. Venable, 666 F.3d at 903 ("We have held that, absent an appropriate basis for comparison, statistical evidence of racial disparity alone cannot establish any element of a discrimination claim. . . . '[S]tatistical evidence of racial disparity is insufficient to infer that prosecutors in a particular case acted with a discriminatory purpose.'" (citation omitted)); Runyon v. United States, 228 F. Supp. 3d 569, 640 (E.D. Va. 2017) (where the petitioner claimed selective death penalty prosecution based on race, recognizing "it is not enough for a petitioner to rely on raw statistics to prove selective prosecution"), aff'd in part, vacated in part, remanded, 994 F.3d 192 (4th Cir. 2021). Furthermore, in July 2014 when the government filed its § 851 notice against petitioner, the Department of Justice had in effect a national policy regarding § 851 enhancements, identifying certain defendant-specific and case-specific factors prosecutors should consider when determining whether the enhancement is appropriate. See Eric J. Holder, Jr., Attorney General, Memorandum to the United States Attorneys and Assistant Attorney General for the Criminal Division, Department Policy on Charging Mandatory Minimum Sentences and Recidivist Enhancements in Certain Drug Cases, at 3 (Aug. 12, 2013), https://www.justice.gov/oip/documents-prior-administrations. None of the factors in that policy pertained to the race or geographical location of the defendant. See id.

Turning to government witnesses Applewhite and Moore, petitioner cannot show that they are similarly situated to him. Because Applewhite was not prosecuted federally, the

11

government could not have sought a § 851 enhancement against him. See Venable, 666 F.3d at 901 ("[I]ndividuals can be 'similarly situated' only if they were prosecuted by the same sovereign."). Moore was prosecuted federally. See United States v. Moore, No. 5:14-CR-59-D (E.D.N.C.). However, he pled guilty shortly after being indicted and before petitioner's trial. He cooperated with the government by testifying against petitioner. These facts make Moore's prosecution distinguishable from petitioner's. See Venable, 666 F.3d at 901 (identifying "the defendant's candor and willingness to plead guilty" as a factor that might justify different prosecutorial decisions).

Because petitioner cannot show persons similarly situated to him did not receive a § 851 enhancement or that the government was motivated by a discriminatory purpose, he is unable to state a habeas corpus claim for selective prosecution.

        3.       *Insufficiency of evidence to convict on Count 1 claim*

Petitioner claims there was insufficient evidence to convict him of the conspiracy charged in Count 1 and faults trial and appellate counsel for not raising the issue. (Mem., DE # 130-1, at 13-16.) Contrary to petitioner's claim, trial counsel *did* attack the sufficiency of the government's evidence on this Count. As discussed above, trial counsel attacked the credibility of the government's key witness, Marcus Moore. Also, trial counsel moved for a judgment of acquittal pursuant to Federal Rule of Evidence 29, (8/6/14 Tr., DE # 89-2, at 28, 30-31), thereby challenging the sufficiency of the government's evidence, see Fed. R. Crim. P. 29 ("After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."). Although the court denied the motions, (8/6/14 Tr., DE # 89-2, at 31), trial counsel cannot be deemed deficient for failing to do something that they in fact did.

On appeal, counsel did not challenge the sufficiency of the government's evidence on Count 1. However, given the heavy burden a defendant faces when seeking reversal on this ground, see United States v. Gutierrez, 963 F.3d 320, 337 (4th Cir. 2020) ("As the party challenging on appeal the sufficiency of the evidence, Appellants bear a 'heavy burden' and must show that a rational trier of fact could not have found the essential elements of the crime beyond a reasonable doubt." (internal quotation marks, alteration, and citation omitted)), cert. denied, 141 S. Ct. 1112 (2021), and given the strong evidence against petitioner, appellate counsel rightly concentrated on other issues and was not deficient.

Additionally, based on that strong evidence, petitioner cannot show prejudice from appellate counsel's failure to raise the issue, and the claim fails on its merits. The testimony of a single uncorroborated witness may support a conviction. United States v. Wilson, 115 F.3d 1185, 1189-90 (4th Cir. 1997). As recounted above, Moore testified about his dealings with petitioner, and law enforcement found items associated with drug trafficking in the apartment. Any reasonable jury could have found beyond a reasonable doubt that there was an agreement between two or more persons to distribute and possess with the intent to distribute five kilograms or more of cocaine; petitioner knew of the conspiracy; and he knowingly and voluntarily participated in the conspiracy. See United States v. Green, 599 F.3d 360, 367 (4th Cir. 2010) (defining elements of a drug trafficking conspiracy under § 846). Therefore, there is no reasonable probability petitioner's conviction on Count 1 would have been reversed had counsel raised the sufficiency-of-the-evidence issue on appeal.

### 4. *Rehaif claim*

Relying on Rehaif, petitioner claims his conviction on Count 5 should be vacated because the government failed to prove that he knew he was a felon.[6] (Mem., DE # 130-1, at 16.) As recognized previously, at trial, petitioner stipulated that he was a felon. Not surprisingly then, petitioner did not contest his felony status on direct appeal. Claims like these, i.e., ones of error that could have been raised on direct appeal, but were not, are procedurally barred unless petitioner shows both cause and prejudice or demonstrates that he is actually innocent of the offense. Bousley v. United States, 523 U.S. 614, 622 (1998); United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012). Petitioner claims he is actually innocent of Count 5. (Resp., DE # 151, at 21.)

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." Bousley, 523 U.S. at 623 (citation omitted). In other words, petitioner "must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." Id. (internal quotation marks and citation omitted). Petitioner cannot meet this burden. It is undisputed that prior to 24 June 2011 (Count 5's offense date), petitioner served a term of imprisonment exceeding one year. (See PSR, DE # 79, ¶¶ 19-20.) Petitioner does not deny that he knew he was a felon. (Cf. Byrd Aff., DE # 130-2.) It is highly unlikely a reasonable juror would have acquitted him on Count 5. Accordingly, petitioner's Rehaif claim is procedurally barred.[7]

---

[6] Counsel was appointed to represent petitioner for determining whether petitioner might qualify for relief pursuant to Rehaif. (DE # 133.) Counsel was permitted to withdraw on the ground that there was no good faith basis for such relief. (See Mot., DE # 136; 5/12/20 Text Order.)

[7] Petitioner also contends trial and appellate counsel were ineffective for not raising the issue. (See Mem., DE # 103-1, at 16; Resp., DE # 151, at 20.) Ineffective assistance of counsel may excuse procedural default of a habeas corpus claim. See Fugit, 703 F.3d at 259. For the same reasons petitioner cannot show he is actually innocent of Count 5, he cannot show he was prejudiced.

14

### 5. *First Step Act of 2018 claim*

Petitioner claims his life sentence on Count 1 violates the First Step Act of 2018 ("First Step Act"). (Mem., DE # 130-1, at 17-18.) On this Count, petitioner was subject to a mandatory life sentence without release because he had two prior convictions for a "felony drug offense." See 21 U.S.C. §§ 841(b)(1)(A) (2010), 846 (1988). The First Step Act reduced sentences under § 841(b)(1)(A), among other things. See Pub. L. No. 115-391, § 401, 132 Stat. 5194, 5220-21 (2018). Had this law applied to petitioner, he may have been subject to a lower mandatory minimum term of imprisonment on Count 1, rather than a mandatory life sentence without release. See 21 U.S.C. § 841(b)(1)(A) (2018). However, the relevant First Step Act amendments "apply to any offense that was committed before the date of enactment of th[e] Act, [21 December 2018,] *if a sentence for the offense has not been imposed as of such date of enactment.*" 132 Stat. at 5221 (emphasis added). Petitioner was sentenced in 2014, more than four years before the First Step Act was enacted. Therefore, his sentence on Count 1 does not violate the First Step Act, and he cannot state a claim for habeas corpus relief on this basis.[8]

### B. Petitioner's Motion to Amend

Rule 15 of the Federal Rules of Civil Procedure governs amendment of a § 2255 motion. See United States v. Pittman, 209 F.3d 314, 317 (4th Cir. 2000) ("[C]ourts have typically applied Federal Rule of Civil Procedure 15 to the amendment of a § 2255 motion." (citations omitted)). Under that rule, although the court is obligated to "freely give leave [to amend] when justice so

---

[8] Nonetheless, petitioner might seek a sentence reduction based on the change in the law being an "extraordinary and compelling reason" under 18 U.S.C. S 3582(c)(1)(A)(i), see Babb v. United States, No. CR ELH-04-0190, 2021 WL 2315459, at *12 (D. Md. June 4, 2021) ("[M]any courts have found that the sentencing disparity resulting from [the First Step Act's] changes to § 851's penalty structure constitutes an extraordinary and compelling reason to grant relief." (collecting cases)), and the court will appoint counsel to represent petitioner for that purpose pursuant to Standing Order No. 19-SO-3 (E.D.N.C. Jan. 25, 2019).

15

requires," Fed. R. Civ. P. 15(a)(2), amendment may be denied in the case of "bad faith, undue prejudice to the opposing party, or futility," Pittman, 209 F.3d at 317 (citations omitted).

First, petitioner seeks to add a claim challenging his sentence on the ground that the mandatory life sentence under § 841(b)(1)(A) prevented the court from fulfilling its duty to consider the sentencing factors under 18 U.S.C. § 3553(a). (Mot., DE # 154, at 1-2.) This claim is meritless, see United States v. Holmes, 384 F. App'x 219, 229 (4th Cir. 2010) (recognizing that "the statutory, mandatory minimum sentence provision based upon the prior felony drug offenses [under § 841(b)(1)(A)] removed any [] discretion" the district court has under § 3553(a) and the sentencing guidelines), and therefore, amending petitioner's § 2255 motion to add this claim would be futile.

The next claim petitioner seeks to add is ineffective assistance of counsel based on trial counsel's failure to challenge his possession with intent to sell and deliver marijuana conviction as a predicate felony drug offense for the § 851 enhancement. (Mot., DE # 154, at 3-5.) At sentencing, trial counsel *did* preserve an objection to this conviction. (See PSR, DE # 79, at 16; 11/3/14 Tr., DE # 89-3, at 17-19.) However, counsel correctly recognized that precedent foreclosed the objection. (See PSR, DE # 79, at 16; 11/3/14 Tr., DE # 89-3, at 19.) See also United States v. Booker, 543 U.S. 220, 244 (2005) ("[W]e reaffirm our holding in [United States v. Apprendi, 530 U.S. 466 (2000)]: Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt."); Almendarez-Torres v. United States, 523 U.S. 224, 226 (1998) ("[I]f the provision simply authorizes an enhanced sentence when an offender also has an earlier conviction, then the indictment need not mention that fact, for the fact of an earlier conviction is

not an element of the present crime."); United States v. McDowell, 745 F.3d 115, 124 (4th Cir. 2014) (recognizing in March 2014 that "*Almendarez–Torres* remains good law, and we may not disregard it unless and until the Supreme Court holds to the contrary." (citation omitted)). Such conduct is not constitutionally ineffective, and therefore, permitting petitioner to amend his § 2255 motion on this basis would be futile.

Finally, petitioner elaborates on his arguments made in support of his selective prosecution claim. (See Mot., DE # 154, at 6-7.) The court has considered these arguments in conjunction with review of petitioner's selective prosecution claim above. Accordingly, there is no need for petitioner to amend his § 2255 motion to raise such arguments.

### C. Claims Raised in Petitioner's Addendum

Although petitioner captioned his addendum as being filed in support of his second amended § 2255 motion, petitioner also appears to raise additional habeas corpus claims in the addendum. (See DE # 156.) Out of an abundance of caution, the court reviews these "new" claims to determine whether petitioner should be allowed to amend his § 2255 motion to allege them.

Petitioner asserts that §§ 841 and 846 (and presumably his sentence on Count 1 thereunder) violate his constitutional right to equal protection because § 841 makes "arbitrary classifications" based on drug quantities. (Id. at 1-2.) This claim is meritless. See United States v. Whitehead, 849 F.2d 849, 859–60 (4th Cir. 1988) ("conclud[ing] that Congress' approach of classifying punishment in relation to the quantity of substances containing narcotics rather than to their purity is rationally related to its goal of sentencing criminals involved in the upper echelons of drug distribution more heavily than those less importantly involved" and rejecting an

equal protection and due process challenge to the Narcotics Penalties and Enforcement Act of 1986), abrogated on other grounds by Gozlon-Peretz v. United States, 498 U.S. 395 (1991).

Petitioner also argues that § 924(c)(1)'s recidivist provision under which he was sentenced is vague and ambiguous, thereby suggesting his conviction on Count 4 should be vacated. (See Add., DE # 156, at 3-5.) The Supreme Court has rejected this argument. See Deal v. United States, 508 U.S. 129, 131-32 (1993) (holding that the language "second or subsequent conviction" under prior version of § 924(c)(1) is not facially ambiguous).

Petitioner further attempts to attack his conviction on Count 4. Relying on United States v. Davis, 139 S. Ct. 2319, 2336 (2019), petitioner argues that his conviction on Count 1 for conspiracy is not a predicate offense for purposes of § 924(c). (Add., DE # 156, at 5-6.) Section 924(c) prohibits, during and in relation to any crime of violence or drug trafficking crime, using or carrying a firearm, or, in furtherance of any such crime, possessing a firearm. 18 U.S.C. § 924(c)(1)(A). On Count 4, petitioner was convicted of possession of a firearm in furtherance of the drug trafficking crime charged in Count 1. Conspiracy to distribute and possess with the intent to distribute five kilograms or more of cocaine, as charged in Count 1, falls within the definition of a drug trafficking crime under § 924(c). See id. § 924(c)(2). The Court's holding in Davis did not concern this definition. See United States v. Crawley, 2 F.4th 257, 262–63 (4th Cir. 2021) ("[T]he drug trafficking predicate is unaffected by the holding[] in . . . Davis . . . ." (citation omitted)).

Finally, petitioner attempts to broaden his Rehaif claim by arguing that his conviction on Count 5 should be vacated because the government did not prove he knew the firearm had traveled in interstate commerce. (See Add., DE # 156, at 6-7.) The Fourth Circuit has long held that in a § 922(g)(1) prosecution, the government is not required to prove the defendant knew of

18

the interstate nexus. See United States v. Langley, 62 F.3d 602, 605-06 (4th Cir. 1995) (en banc), abrogated on other grounds by Rehaif, 139 S. Ct. at 2194. Rehaif did not change this holding. See United States v. Jackson, No. CR 3:17-810-CMC, 2021 WL 694848, at *15 (D.S.C. Feb. 23, 2021).

In sum, to the extent petitioner attempts to allege a "new" habeas corpus claim in his addendum, such claim is futile.

### III, CONCLUSION

The government's motion to dismiss is ALLOWED, and petitioner's second amended § 2255 is DISMISSED WITH PREJUDICE. Petitioner's motions to amend, for an evidentiary hearing, and for appointment of counsel for purposes of § 2255 relief are DENIED. The court finds that petitioner has not made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings, a certificate of appealability is DENIED.

The court appoints the Office of the Federal Public Defender to represent petitioner for the purpose of determining whether petitioner might qualify for a sentence reduction pursuant to the First Step Act. In re First Step Act of 2018, No. 19-SO-3 (E.D.N.C. Jan. 25, 2019).

The Clerk is DIRECTED to enter judgment and close this case.

This 7 January 2022.

_____
W. Earl Britt
Senior U.S. District Judge