IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:12-CR-312-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MARCUS DORRELL BYRD, | ) | |
| | ) | |
| Defendant. | ) | |

On October 3, 2023, Marcus Dorrell Byrd ("Byrd" or "defendant") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 162]. On October 4, 2023, Byrd filed a memorandum in support with exhibits [D.E. 163]. Byrd asks the court to reduce his sentence from life plus 300 months' consecutive imprisonment to 300 months' imprisonment. See id. at 11–13. Byrd contends that he should receive compassionate release "based on changes in sentencing laws that would dramatically reduce the penalties and sentence [he] would face today." [D.E. 162] 1. On December 18, 2023, the United States responded in opposition [D.E. 171]. On August 4, 2025, Byrd replied [D.E. 177]. As explained below, in light of the record, Rutherford v. United States, 146 S. Ct. 1320 (2026), and Fernandez v. United States, 146 S. Ct. 1292 (2026), the court denies Byrd's motion for compassionate release.

I.

While on supervised release for participating in a major cocaine-trafficking conspiracy, Byrd participated in another major cocaine-trafficking conspiracy. See Presentence Investigation

Report ("PSR") [D.E. 79] ¶¶ 9–11, 19–20.[1] On August 7, 2014, a jury convicted Byrd of conspiring to distribute and possess with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. § 846 (count one), distributing cocaine in violation of 21 U.S.C. § 841 (counts two and three), possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) (count four), and possession of a firearm by a felon in violation of 18 U.S.C. § 922(g) (count five). See [D.E. 73, 74]. On November 3, 2014, United States District Judge W. Earl Britt held Byrd's sentencing hearing. See PSR; [D.E. 81, 82]; Sent'g Tr. [D.E. 89-3] 1–20. The court calculated Byrd's total offense level to be 37, his criminal history category to be VI, and the guideline range to be life imprisonment on count one, 360 months' to life imprisonment on counts two, three, and five, and 300 months' consecutive imprisonment on count four. See Sent'g Tr. 2–5; PSR ¶¶ 61–62. The court sentenced Byrd to (1) life imprisonment on count one, (2) 360 months' concurrent imprisonment on counts two and three, (3) 300 months' consecutive imprisonment on count four, and (4) 180 months' concurrent imprisonment on count five. See Sent'g Tr. 14–15; [D.E. 82] 3. The sentences on counts one and four were mandatory. See Sent'g Tr. 2–15.

On November 13, 2014, Byrd appealed. See [D.E. 83]. On June 26, 2017, the Fourth Circuit affirmed Byrd's convictions and sentence. See United States v. Byrd, 700 F. App'x 183, 184–89 (4th Cir. 2017) (per curiam) (unpublished). On December 4, 2017, the Supreme Court denied Byrd's petition for a writ of certiorari. See Byrd v. United States, 583 U.S. 1022 (2017) (mem.).

---

[1] On October 19, 1995, Byrd instigated, conspired, and assisted to cause a mutiny or riot at the Federal Correctional Institute Talladega and received a 110-month sentence imposed consecutive to his first federal drug trafficking convictions. See PSR ¶ 20.

Case 5:12-cr-00312-D    Document 182    Filed 06/12/26    Page 2 of 15

On February 28, 2018, Byrd filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. See [D.E. 96]. On May 1, 2019, the court granted Byrd's motion to amend his section 2255 motion. See [D.E. 111]. On March 27, 2020, the court granted Byrd's motion to file a second amended section 2255 motion. See [D.E. 131]. On May 26, 2020, the United States moved to dismiss Byrd's second amended section 2255 motion. See [D.E. 139, 140]. On January 7, 2022, the court dismissed with prejudice Byrd's second amended section 2255 motion. See Byrd v. United States, No. 5:12-CR-312, 2022 WL 79864, at *1–10 (E.D.N.C. Jan. 7, 2022) (unpublished). Byrd did not appeal.

On October 3, 2023, Byrd moved for compassionate release. See [D.E. 162]. On August 25, 2025, the case was reassigned to the undersigned. See [D.E. 180].

## II.

A court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Bethea, 54 F.4th 826, 831 (4th Cir. 2022); United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021) (per curiam); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020), abrogated on other grounds by Rutherford, 146 S. Ct. 1320. A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see United States v. Ferguson, 55 F.4th 262, 268 (4th Cir. 2022). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See United States v. Washington, 161 F.4th 816, 818 (4th Cir. 2025); Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. A circumstance is extraordinary when it is "most unusual, far from common, or having little or no precedent." Rutherford, 146 S. Ct. at 1330 (citation and quotations omitted). "Compelling . . . means tending to convince or convert by or as if by forcefulness of evidence." Id. (citation and quotations omitted). Thus, "extraordinary and compelling reasons for compassionate release are those that are especially unusual and convincing." Id. (quotations omitted); see also Fernandez, 146 S. Ct. at 1307. "That is a demanding standard." Fernandez, 146 S. Ct. at 1302.

The Sentencing Commission policy statement in U.S.S.G. § 1B1.13 applies to a defendant's compassionate release motion. See U.S.S.G. § 1B1.13(a). Section 1B1.13(b) became effective on November 1, 2023, and lists several extraordinary and compelling reasons, including (1) a defendant's medical circumstances; (2) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her

imprisonment term; (3) a defendant's family circumstances; (4) a defendant who suffered sexual abuse, or physical abuse with serious bodily injury, at the hands of those with custody over the defendant while serving the term of imprisonment sought to be reduced; (5) any other reasons similar in gravity to those described in paragraphs (1) through (4) of the policy statement; or (6) a qualifying change in the law that produces a gross disparity between the defendant's unusually long sentence being served and the sentence likely to be imposed at the time the motion is filed, after fully considering the defendant's individual circumstances. See U.S.S.G. § 1B1.13(b), invalidated in part by Rutherford, 146 S. Ct. at 1334–35. A defendant's rehabilitation alone is not an extraordinary or compelling reason, but it "may be considered in combination with other circumstances in determining whether and to what extent a reduction . . . is warranted." U.S.S.G. § 1B1.13(d); see 28 U.S.C. § 994(t); United States v. Davis, 99 F.4th 647, 659 (4th Cir. 2024), abrogated on other grounds by Rutherford, 146 S. Ct. 1320; McCoy, 981 F.3d at 286 n.9. "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant a" sentence reduction. U.S.S.G. § 1B1.13(e).

### III.

Byrd argues that the disparity between his sentence and the sentence he likely would receive today because of nonretroactive changes in the law create an extraordinary and compelling reason for compassionate release. See [D.E. 162] 1; [D.E. 163] 1–6; [D.E. 177] 2–3. Specifically, Byrd argues that if sentenced today, he would not face a mandatory life sentence on count one, and he no longer would be a career offender or an armed career criminal because his federal convictions for conspiring to possess with intent to distribute cocaine and for instigating, conspiring, and assisting a mutiny or riot at a federal correctional institution would no longer qualify as proper predicate convictions. See [D.E. 163] 4–5; [D.E. 177] 3. Byrd calculates his

new advisory guideline range if the court sentenced him today as 180 to 188 months' imprisonment on counts one, two, and three, 300 months' consecutive imprisonment on count four, and 120 months' concurrent imprisonment on count five. See [D.E. 163] 5. In light of "changes in sentencing laws that would dramatically reduce the penalties and sentence [he] would face today," Byrd asks the court to reduce his sentence to 300 months' imprisonment. [D.E. 162] 1; see [D.E. 163] 12–13. Byrd's requested sentence is a 180-month downward variance from the applicable 480-month mandatory minimum sentence that Byrd would receive if Byrd were sentenced today (i.e., 180 months' imprisonment on count one and 300 months' consecutive imprisonment on count four).

The First Step Act included numerous nonretroactive changes. See First Step Act, Pub. L. No. 115-391, § 401(c), 132 Stat. at 5221 ("This section, and the amendments made by this section, shall apply to any offense that was committed before the date of enactment of this Act, if a sentence for the offense has not been imposed as of such date of enactment."). For example, the First Step Act replaced the phrase "felony drug offense" in 21 U.S.C. § 841(b)(1) with the phrase "serious drug felony" and struck the mandatory life sentence imposed for two or more prior convictions for felony drug offenses. See First Step Act, Pub. L. No. 115-391, § 401(a), 132 Stat. at 5220. Thus, if Byrd were sentenced today, he would not be subject to a mandatory life sentence on count one. Moreover, because of the First Step Act's changes to section 841(b)(1), Byrd's possession with intent to sell and deliver marijuana conviction would not be a serious drug felony if he were sentenced today because Byrd received a suspended three-year sentence and committed that offense in 1990. See 21 U.S.C. § 802(58) (defining "serious drug felony" as an offense described in 18 U.S.C. § 924(e)(2), for which the defendant served a term of imprisonment of more than 12 months and was released within 15 years of the commencement of the offense of conviction); PSR

Case 5:12-cr-00312-D    Document 182    Filed 06/12/26    Page 6 of 15

¶ 17. But Byrd's conspiracy to possess with intent to distribute cocaine conviction would be a serious drug felony. See 21 U.S.C. § 802(58); 18 U.S.C. § 924(e)(2)(A)(i); [D.E. 163] 4 n.9; PSR ¶ 19. Furthermore, under section 841(b)(1), Byrd would face a mandatory minimum sentence of 180 months' imprisonment on count one. See 21 U.S.C. § 841(b)(1)(A)(ii). And he would face up to life imprisonment on count one. See id. Likewise, Byrd would continue to be subject to a 300-month consecutive sentence on count four. See 18 U.S.C. § 924(c)(1)(C)–(D). Thus, if sentenced today, Byrd's mandatory minimum sentence would be 480 months' imprisonment.

As for Byrd's status as a career offender and armed career criminal, if Byrd were sentenced today, Byrd's convictions for conspiracy to possess with intent to distribute cocaine (PSR ¶ 19) and instigating, conspiring, and assisting a mutiny or riot at a federal correctional institution (id. ¶ 20) would not qualify as predicate convictions under the career offender guideline and the Armed Career Criminal Act. See United States v. Norman, 935 F.3d 232, 236–42 (4th Cir. 2019) (holding that a conviction for conspiring to distribute a controlled substances under 21 U.S.C. § 846 is not a "controlled substance offense" under U.S.S.G. § 4B1.2); United States v. Simms, 914 F.3d 229, 233–37 (4th Cir. 2019) (en banc) (holding that conspiracy to commit Hobbs Act robbery is not a "crime of violence" under the force clause of 18 U.S.C. § 924(c)(3)(A) and that the definition of "crime of violence" under the residual clause of 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague). Thus, Byrd would not be a career offender, and Byrd's sentence on count five could be no more than 120 months' concurrent imprisonment instead of 180 months' concurrent imprisonment. See Byrd, 700 F. App'x at 188–89.

Before the Supreme Court's decision in Rutherford v. United States, 146 S. Ct. 1320 (2026), the Fourth Circuit recognized that "once a career offender status is imposed, it cannot be retroactively altered," but held that under U.S.S.G. § 1B1.13(b)(6), the fact that a defendant would

no longer qualify as a career offender under the guidelines may be considered an extraordinary and compelling reason for a sentence reduction. See Davis, 99 F.4th at 656–58; cf. Concepcion v. United States, 597 U.S. 481, 495–502 (2022) (holding that district courts in First Step Act sentence modification proceedings involving retroactive crack-cocaine sentencing ranges under the First Step Act also may consider unrelated legal changes that have occurred since the original sentencing, including the non-retroactive 2016 Sentencing Guidelines amendments that substantially altered the career offender guidelines). In Davis, the Fourth Circuit reasoned that "Concepcion's broad reasoning permits federal judges to think expansively about what constitute[s] 'extraordinary and compelling reasons' for release, absent specific congressional limitations." Davis, 99 F.4th at 657–58. In Rutherford, the Supreme Court rejected this reasoning. The Supreme Court explained that, in 18 U.S.C. § 3582(c)(1)(A)(i), "Congress has expressly cabined district courts' discretion by prohibiting a reduction in sentence unless a court finds that 'extraordinary and compelling' reasons warrant it." Rutherford, 146 S. Ct. at 1333 (cleaned up). And the Supreme Court held that nonretroactive changes to the penalties for violating 18 U.S.C. § 924(c) are not extraordinary and compelling reasons and invalidated section 1B1.13(b)(6) "to the extent that it counsels otherwise." Id. at 1335.

The alleged disparity between the sentence Byrd received in 2014 and the sentence Byrd believes he would receive if he were sentenced today is not an extraordinary and compelling reason under 18 U.S.C. § 3582(c)(1)(A)(i). See id. at 1330 (characterizing such disparities as "unexceptional feature[s] of a system in which nonretroactivity is the default"); cf. United States v. Johnson, __ S. Ct. __, 2026 WL 1640930, at *1 (2026) (vacating and remanding, in light of Rutherford and Fernandez, United States v. Johnson, 143 F.4th 212 (4th Cir. 2025), which held that a district court could consider the disparity between a defendant's sentence and the sentences

of his codefendants who pleaded guilty and cooperated under the "other reasons" policy statement in U.S.S.G. § 1B1.13(b)(5)).  In Rutherford, the Supreme Court held that before examining the section 3553(a) factors in connection with a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), "a court must first ensure that a movant is part of the limited class of prisoners who are eligible for such a reduction." 146 S. Ct. at 1333 (cleaned up).  "And whether a prisoner is eligible depends on whether he can offer extraordinary and compelling reasons that 'warrant' compassionate release, not on the [section] 3553(a) factors."  Id. (quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  "This gatekeeping requirement is not . . . a free-for-all." Id. "It is a distinct analytical step that imposes independent and ascertainable limits on access to compassionate release." Id.

Byrd fails to demonstrate that extraordinary and compelling reasons support reducing his sentence.  As for nonretroactive changes in the law under the First Step Act, those changes are not extraordinary and compelling reasons. See id. at 1330; Fernandez, 146 S. Ct. at 1302–07.  As for changes to the career offender guidelines or cases construing the Armed Career Criminal Act that arose after Byrd's sentencing on November 3, 2014, Fernandez suggests that, when a later judicial decision or guideline amendment would alter a rule of decision that applied when the court sentenced a defendant, the proper vehicle to correct the sentence is a motion under section 2255, not a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i). See 146 S. Ct. at 1303–07. Notably, in Fernandez, the Supreme Court rejected the defendant's argument that "the ability to bring a merits-based challenge under [section] 3582 mitigates the error and the unfairness of the prisoner's not having been able to bring it under [section] 2255." Id. at 1302 (cleaned up).  This principle applies when a defendant, like Byrd, asserts that a later judicial decision or guideline amendment would likely result in a shorter sentence, because section 2255(f)'s "tight procedural

9

constraints" generally would prohibit such a claim from being brought under 28 U.S.C. § 2255 if the later judicial decision occurred more than a year after the conviction became final. Id. at 1300; see id. at 1303 ("A reason is not 'compelling' if Congress has channeled it through the postconviction statutes."); 28 U.S.C. § 2255(f)(1)–(4). In Fernandez, the Supreme Court also explained that the compassionate release statute's "focus on granting mercy rather than righting legal wrongs," and the Bureau of Prison's "institutional expertise" concerning "the daily lives of prisoners" and not "evaluat[ing] legal arguments" supported its conclusion that doubt about a defendant's conviction is not an extraordinary and compelling reason for compassionate release. 146 S. Ct. at 1303–05. Thus, the changes in sentencing laws that Byrd cites do not constitute "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i) or U.S.S.G. § 1B1.13(b)(6), and the court denies Byrd's motion for compassionate release.

As for the "other reasons" policy statement in U.S.S.G. § 1B1.13(b)(5), Byrd did not make an argument under U.S.S.G. § 1B1.13(b)(5) and thereby forfeited any such argument. See, e.g., Hamer v. Neighborhood Hous. Servs. of Chi., 583 U.S. 17, 20 n.1 (2017). Even if Byrd did not forfeit any argument under section 1B1.13(b)(5), "other reasons" do not support reducing Byrd's sentence. An other reason under section 1B1.13(b)(5) must be "similar in gravity" to the enumerated reasons in section 1B1.13(b)(1)–(4). U.S.S.G. § 1B1.13(b)(5). But, as explained in Rutherford and Fernandez, Byrd's cited reasons (i.e., "changes in sentencing laws that would dramatically reduce the penalties and sentence Mr. Byrd would face today" [D.E. 162] 1) are not extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i). Section 1B1.13(b)(5) cannot make extraordinary and compelling what the Supreme Court has held is "an unexceptional feature of a system in which nonretroactivity is the default." Rutherford, 146 S. Ct. at 1330. Stated

10

differently, a prisoner cannot use the portion of U.S.S.G. § 1B1.13(b)(6) that the Supreme Court invalidated in <u>Rutherford</u> to obtain relief under U.S.S.G. § 1B1.13(b)(5). <u>See</u> <u>id.</u>

In reaching these conclusions, the court notes that the Sentencing Commission updated section 1B1.13 after the First Step Act, and the amendments became effective on November 1, 2023. <u>See</u> U.S. Sent'g Comm'n, Submission of 2023 Amendments to Congress (May 2023), [https://perma.cc/T9TE-QLR6]; U.S.S.G § 1B1.13(b). On October 3, 2023, Byrd filed his motion for compassionate release and did not cite section 1B1.13. <u>See</u> [D.E. 162]. He also did not cite it in his reply brief. <u>See</u> [D.E. 177]. In any event, <u>Rutherford</u>'s and <u>Fernandez</u>'s reasoning rests on 18 U.S.C. § 3582(c)(1)(A)(i) and dooms Byrd's arguments. <u>See</u> <u>Rutherford</u>, 146 S. Ct. at 1330; <u>Fernandez</u>, 146 S. Ct. at 1302–03. Moreover, to the extent that Byrd thinks <u>Concepcion</u> grants a judicial license to use changes in sentencing laws that occurred after his sentencing as a rationale for compassionate release, <u>Rutherford</u> rejected the argument. As the Supreme Court explained in <u>Rutherford</u>, "<u>Concepcion</u> involved sentence-modification proceedings under a different provision of the [First Step] Act." <u>Rutherford</u>, 146 S. Ct. at 1333. Byrd's case "differ[s] from <u>Concepcion</u> because [it] concern[s] whether a prisoner is eligible for compassionate release in the first place." <u>Id.</u> "And on that score, Congress has expressly cabined district courts' discretion by prohibiting a reduction in sentence unless a court finds that 'extraordinary and compelling' reasons warrant it." <u>Id.</u> (cleaned up).

To the extent Byrd relies on rehabilitation, Byrd has a mixed (at best) record while incarcerated. <u>See</u> [D.E. 163-2] 1–9; [D.E. 163-3] 1–2; [D.E. 163-4] 1–4. Notably, during Byrd's latest trip to federal prison, Byrd has several serious disciplinary infractions, including possessing drugs or alcohol, disruptive conduct, possessing a non-hazardous tool, mail abuse, being absent from assignment, and use of drugs or alcohol. <u>See</u> [D.E. 163-2] 1–2. And, in any event, Byrd's

11

rehabilitation alone is not an extraordinary and compelling reason. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13(d); Davis, 99 F.4th at 659; McCoy, 981 F.3d at 286 n.9.

On this record, Byrd has failed to demonstrate "that extraordinary and compelling reasons warrant" compassionate release. 18 U.S.C. § 3582(c)(1)(A)(i); Rutherford, 146 S. Ct. at 1330–35; Fernandez, 146 S. Ct. at 1300–05. Thus, the court denies Byrd's motion for compassionate release.

Alternatively, even if Byrd demonstrated extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A)(i) and U.S.S.G. § 1B1.13(b)(5), the section 3553(a) factors counsel against granting Byrd's motion. See Concepcion, 597 U.S. at 499–502; Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32. Byrd is 54 years old and engaged in extremely serious and prolonged criminal conduct. The jury convicted Byrd of five charges related to armed drug dealing as part of a major cocaine-trafficking conspiracy and attributed five kilograms or more of cocaine to Byrd. See [D.E. 74] 1–2. On June 1, 2011, Byrd sold a confidential source 55.5 grams of cocaine. See PSR ¶ 9. On June 8, 2011, Byrd sold a confidential source 54.6 grams of cocaine. See id. When investigators searched Byrd's residence, investigators recovered a loaded handgun and $15,284. See id. A co-conspirator reported supplying Byrd with 30 kilograms of cocaine between 2009 and March 2011. See id. ¶ 10.

Byrd's appalling criminal behavior was nothing new. Byrd participated in his latest major drug-trafficking conspiracy while on federal supervised release for participating in a major drug-trafficking conspiracy. See id. ¶ 19. Byrd received a 144-month federal sentence for his first federal drug-trafficking conspiracy. See id. While in federal prison serving that first federal sentence, Byrd instigated, conspired, and assisted to cause a mutiny or riot at the Federal Correctional Institution Talladega and received a 110-month consecutive sentence. See id. ¶ 20. During the riot, inmates viciously assaulted correctional officers, destroyed property worth

approximately $3 million, and set fires. See id. Byrd used a baseball bat to break windows in the correctional facility. See id. Byrd got out of federal prison in June 2007, and he returned to drug dealing in 2009. See id. ¶¶ 9–11.

Notably, before Byrd's first federal conviction and incarceration, Byrd received state misdemeanor convictions for maintaining a dwelling, motor vehicle, or premise for keeping a controlled substance, carrying a concealed weapon, and possessing cocaine. See id. ¶¶ 15, 17–18. Byrd also received state felony convictions for possession with intent to sell and deliver marijuana and sale and delivery of marijuana. See id. ¶¶ 16–17. Byrd learned nothing from these interactions with the state judicial system and instead repeatedly escalated his criminal behavior.

In evaluating the section 3553(a) factors, Byrd asks the court to consider "the circumstances under which his drug quantity and sentence were determined, as well as his relative culpability" to Marcus Moore, a cooperating witness who pleaded guilty and testified against Byrd at trial and received a 132-month sentence. [D.E. 163] 10; see id. at 6–13; [D.E. 177] 3–4; PSR ¶ 8. Byrd also cites his age and his recent rehabilitative efforts while in prison. See [D.E. 163] 12–13; [D.E. 177] 3–4.

As for Byrd's argument about the drug weight, to the extent that Byrd assails the jury's verdict, the jury's finding that five or more kilograms of cocaine were attributable to Byrd, or the drug weight calculation at sentencing, the argument is a collateral attack on his underlying conviction and sentence and cannot be raised in a motion for compassionate release. See Fernandez, 146 S. Ct. at 1305 (explaining that "if a prisoner moves for relief because of alleged problems with the underlying criminal . . . trial, his motion suggests that his conviction is flawed" and he must raise the argument in a section 2255 motion, not a motion under section 3582); cf. Byrd, 2022 WL 79864, at *1–10 (dismissing with prejudice Byrd's section 2255 motion). In any

13

event, the court has considered Byrd's argument about the drug weight in balancing the section 3553(a) factors and finds it unpersuasive.

As for Byrd's argument about the alleged disparity between Moore's sentence and his sentence, the disparity is warranted. See 18 U.S.C. § 3553(a)(6); Pepper v. United States, 562 U.S. 476, 503 (2011) (stating that there is no evidence Congress enacted section 3553(a)(6) "out of a concern with disparities resulting from the normal trial and sentencing process"); United States v. Susi, 674 F.3d 278, 288 (4th Cir. 2012) (describing the "logical conclusion that [section] 3553(a)(6)'s avoidance of unwarranted sentencing disparities does not require courts to sentence similarly individuals who go to trial and those who plead guilty" because they "are not similarly situated for sentencing purposes"). Moore pleaded guilty, accepted responsibility, and cooperated. Byrd did not. The disparity between Byrd's sentence and Moore's sentence does not support reducing Byrd's sentence, particularly given Byrd's appalling and relentless criminal behavior throughout his life.

As for Byrd's age and rehabilitation, Byrd is 54 years old and has a mixed record while incarcerated for his latest criminal convictions. Byrd has completed educational courses, held a job, and completed drug education programming. See [D.E. 163-3]; [D.E. 163-4]. But Byrd also committed serious infractions during his latest federal incarceration, see [D.E. 163-2] 1–2, as he did during his first period of federal incarceration. See id. at 2–9. Moreover, Byrd participated in a heinous prison riot during his first period of federal incarceration. See PSR ¶ 20. Although Byrd cites statistics concerning recidivism rates and asserts that he is "in a class of prisoners less likely to recidivate than younger offenders," Byrd already was in that class of offenders when he reoffended while on federal supervision. [D.E. 163] 12; see PSR ¶ 19. Byrd is a recidivist's

recidivist, and society needs protection from Byrd. The court rejects Byrd's argument about his age and rehabilitation.

The court has considered the entire record, the section 3553(a) factors, Byrd's arguments, and the government's persuasive response. The court also has considered the need to punish Byrd for his appalling and relentless criminal behavior, to incapacitate Byrd, to promote respect for the law, to deter others, and to protect society from Byrd. Given the entire record, the court denies Byrd's motion for compassionate release. See, e.g., Rutherford, 146 S. Ct. at 1330–35; Fernandez, 146 S. Ct. at 1302–07; Concepcion, 597 U.S. at 498–501; Chavez-Meza v. United States, 585 U.S. 109, 117–20 (2018); Pepper, 562 U.S. at 480–81; Washington, 161 F.4th at 820–24; United States v. Smith, 75 F.4th 459, 464–66 (4th Cir. 2023); United States v. Troy, 64 F.4th 177, 185 (4th Cir. 2023); United States v. Reed, 58 F.4th 816, 821–24 (4th Cir. 2023); United States v. Roane, 51 F.4th 541, 551–52 (4th Cir. 2022); Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

IV.

In sum, the court DENIES defendant's motions for compassionate release [D.E. 162].

SO ORDERED. This 12 day of June, 2026.

JAMES C. DEVER III
United States District Judge